UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                                                          :
STEVE AWAD,                                               :      **MEMORANDUM**
                                                          :      **DECISION AND ORDER**
                                                          :
                                    Plaintiff,            :      13 Civ. 5753 (BMC)
                                                          :
                  - against -                             :
                                                          :
CITY OF NEW YORK; NEW YORK CITY                           :
DEPARTMENT OF ENVIRONMENTAL                               :
PROTECTION; GREGORY HOAG; FRANK                           :
MILAZZO; KEVIN MCBRIDE; VASSILIOS                         :
ZOUMBOULIAS; AND JOHN AND JANE                            :
DOE,                                                      :
                                                          :
                                    Defendants.           :
--------------------------------------------------------- X

**COGAN**, District Judge.

        This case is before me on defendants' [11] partial motion to dismiss the amended

complaint.  For the reasons stated below, the motion to dismiss is granted in part and denied in

part.  First, I find that the amended complaint states a sufficient Title VII discrimination claim;

however, the § 1981, § 1983, New York State Human Rights Law ("NYSHRL"), and New York

City Human Rights Law ("NYCHRL") discrimination claims against Kevin McBride, Frank

Milazzo, and Vassilios Zoumboulias (together with Gregory Hoag, the "Individual Defendants")

are dismissed.  Second, while plaintiff has pled a hostile work environment claim under Title

VII, plaintiff's § 1981, § 1983, NYSHRL, and NYCHRL hostile work environment claims

against McBride, Milazzo, and Zoumboulias are dismissed.  Third, plaintiff has sufficiently pled

retaliation claims; however, to the extent plaintiff relies on the Fourteenth Amendment for his §

1983 retaliation claim, his § 1983 retaliation claim is dismissed.  Fourth, the City of New York

("City") is dismissed from this action because there is no basis to impose municipal liability. Fifth, plaintiff concedes that DEP is not a suable entity and so it is removed as a defendant in this action. Finally, at the initial status conference, plaintiff conceded that he is not allowed to recover for alleged discriminatory actions that are time-barred.[1]

## BACKGROUND

Plaintiff is an African American of Egyptian national origin. He began working as an Associate Engineering Technician Level II for the Department of Environmental Protection ("DEP") in 1988. From 1988 to 2009, plaintiff was promoted several times. By November 2009, he was appointed the Deputy Director of HAZMAT.

Plaintiff alleges that he began experiencing a hostile work environment once he started working with defendant Hoag in March 2009. Hoag repeatedly made discriminatory remarks to plaintiff regarding plaintiff's national origin and race. According to plaintiff, Hoag harbored a discriminatory animus towards DEP employees of Middle Eastern descent, which influenced the ways in which he treated plaintiff. Hoag prohibited plaintiff from speaking to certain DEP employees, limited plaintiff's involvement in certain projects, stripped plaintiff's oversight over certain units, and excluded plaintiff from meetings. In addition to the discrimination plaintiff alleges he suffered by Hoag, plaintiff further alleges that he experienced disparate treatment at DEP in that he was not allowed to report insubordinate staff members and was paid the same total salary as a Caucasian employee, even though he had more experience and seniority.

---

[1] At the initial status conference, I asked defendants if they thought there was still a statute of limitations claim, because in the letter plaintiff filed prior to the conference, plaintiff had conceded that he could not recover for adverse actions taken before the time period allotted by the applicable statute of limitations. I stated to defendants, "I read [plaintiff's] letter as effectively conceding your point with the proviso that she can still use that stuff to prove intent. That's the law." Defendants' counsel responded, "For background, yes, Your Honor. I do understand that now having collaborated."

In 2011, after defendant Milazzo sent a memorandum to the Deputy Commissioner of Human Resources requesting plaintiff's demotion, plaintiff was demoted in both title and salary. Shortly thereafter, he was transferred to a position in Security Systems Engineering, a unit in the Bureau of Police & Security at DEP. There, plaintiff alleges that he was excluded from meetings and certain DEP work locations. His work-product was routinely criticized by defendants, particularly defendant Zoumboulias. Zoumboulias also denied plaintiff security clearances and would not provide him with internet and long-distance telephone access. Additionally, plaintiff alleges that defendants McBride and Hoag retaliated against him for speaking out about public matters. Finally, plaintiff, an active participant in Local 375, alleges that defendants retaliated against him for participating in union activities.

## DISCUSSION

I. **Plaintiff's Discrimination Claims**

 a. *Pleading Standard for a Title VII Discrimination Claim*

In reviewing the sufficiency of plaintiff's amended complaint, this court "must accept as true all of the factual allegations contained in the complaint." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1. Additionally, courts can disregard those pleadings that are "no more than conclusions" and determine whether the remaining factual allegations "plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 663-64, 679 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

At the pleading stage, plaintiff is not required to plead facts showing a prima facie case of discrimination. Swierkiewicz, 534 U.S. at 511; see also Jackson v. NYS Dep't of Labor, 709 F. Supp. 2d 218, 223-24 (S.D.N.Y. 2010) ("In the context of a discrimination claim, the Iqbal

plausibility standard applies in conjunction with employment discrimination pleading standards.") (internal quotation marks omitted).  However, the elements of a prima facie case "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible."  Humphries v. City Univ. of New York, No. 13 Civ. 2641, 2013 WL 6196561, at *6 (S.D.N.Y. Nov. 26, 2013) (citations and quotations omitted).  A prima facie case of employment discrimination requires proof of (1) plaintiff's membership in a protected class; (2) that plaintiff was qualified for the position at issue; (3) that he was subjected to a materially adverse employment action; and (4) that the circumstances give rise to an inference of unlawful discrimination.  Lore v. City of Syracuse, 670 F.3d 127, 169 (2d Cir. 2012).

      b.   *Plaintiff's Title VII Discrimination Claim*

For plaintiff to properly allege a Title VII discrimination claim against the City, he must present facts indicating that the discriminatory conduct taken against him at DEP rose to the level of "an adverse employment action."  See Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007).  An adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities. . . . [It] might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  See Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks and citation omitted).

Plaintiff alleges that while he was at DEP, each of the Individual Defendants harmed him in some way.  The bulk of plaintiff's amended complaint focuses on the actions taken by Hoag, who allegedly made plaintiff's life at DEP difficult; in plaintiff's words, "Hoag [was] committed to diminishing plaintiff's authority and began a campaign to eliminate plaintiff from the Deputy

Director position." Hoag restricted plaintiff's access to the HAZMAT locations under plaintiff's purview, restricted the persons at DEP who plaintiff could talk to, removed divisions from plaintiff's supervision, and revoked plaintiff's security clearance. Additionally, Hoag delegated plaintiff's oversight of his unit's operations and delegated them to plaintiff's secretary, Joanne Nurse. As plaintiff states, Hoag made "plaintiff a manager in title only."

Plaintiff alleges similar mistreatment by Zoumboulias. Zoumboulias allegedly excluded plaintiff from meetings and refused to provide plaintiff with the security clearances needed to access certain DEP sites. Zoumboulias also prohibited plaintiff from having internet and long-distance telephone access; plaintiff was the only person in his unit without these amenities. Plaintiff allegedly notified Zoumboulias that he needed internet access to perform his job functions, but to date Zoumboulias has not addressed plaintiff's concerns. Further, Zoumboulias refused to provide plaintiff with any mechanical engineering assignments and instead assigned him "out of title," "menial" tasks which were not commensurate with his expertise and skills. Zoumboulias denied plaintiff overtime and compensatory time; here, too, plaintiff was the only person in his unit without access to overtime or compensatory time. Finally, Zoumboulias repeatedly yelled at plaintiff, and on at least one occasion screamed that plaintiff "was not fit to perform any engineering tasks."

Both Hoag's and Zoumboulias' stripping of plaintiff's responsibilities, while perhaps not as extreme as termination or a decrease in salary or benefits, are each enough to support an inference that plaintiff suffered a material adverse action. See Patane, 508 F.3d at 116 (finding that plaintiff's allegation that she was stripped of virtually all of her secretarial functions qualified as an adverse employment action); see also Lore, 670 F.3d at 170; Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008); Patrolmen's Benevolent Ass'n v. City of New

York, 310 F.3d 43, 51 (2d Cir. 2002). Plaintiff alleges a plausible adverse employment action when he states that Zoumboulias not just altered his job responsibilities, but significantly diminished them by assigning plaintiff only "menial" tasks which were completely outside of his title. See Rodriguez v. Bd. of Ed. Of Eastchester Union Free Sch. Dist., 620 F.2d 362, 366 (2d Cir. 1980) (finding that where a junior high school teacher was forced to teach at the elementary level thereby rendering "utterly useless her twenty years of experience and study in developing art programs," there was a "radical change in the nature of the work [the plaintiff] was called upon to perform[, which] constitutes interference with a condition or privilege of employment adversely affecting her status within the meaning of [Title VII]"); see also Wright v. N.Y.C. Off-Track Betting Corp., No. 05 CV 9790, 2008 WL 762196, at *4 (S.D.N.Y. Mar. 24, 2008). In addition, plaintiff plausibly suffered an adverse employment action when Zoumboulias took away plaintiff's internet access, which made it difficult for plaintiff to do his job. See De La Peña v. Metropolitan Life Ins. Co., 953 F. Supp. 2d 393, 411-12 (E.D.N.Y. 2013) (finding that plaintiff's allegations that he was deprived of computer access "could easily fall into the category of 'adverse employment action'"); Lorenzo v. St. Luke's-Roosevelt Hosp. Ctr., 837 F. Supp. 2d 53, 62 (E.D.N.Y. 2011). Finally, plaintiff has also plausibly shown that he suffered an adverse employment action when Zoumboulias denied him overtime and compensatory time. See Mazyck v. Metro. Transp. Auth., 893 F. Supp. 2d 574, 589 (S.D.N.Y. 2012) ("denial of overtime can constitute an adverse employment action"); Little v. Nat'l Broad. Co., Inc., 210 F. Supp. 2d 330, 379 (S.D.N.Y. 2002).

The second inquiry I must conduct to determine whether plaintiff has sufficiently pled a Title VII discrimination claim is examining whether the adverse employment actions suffered by plaintiff were caused by a discriminatory intent. See Swierkiewicz, 534 U.S. at 514; Brodt v.

City of New York, No. 13 Civ. 3272, 2014 WL 896740, at *4 (S.D.N.Y. Mar. 6, 2014). Here, plaintiff has pled facts that suggest Hoag's adverse employment actions were caused by his discrimination against plaintiff. See McIntyre v. Longwood Central Sch. Dist., No. 07 Civ. 1337, 2008 WL 850263, at *8 (E.D.N.Y. Mar. 27, 2008), aff'd, 380 F. App'x 44 (2d Cir. 2010) (citing Ferro v. Ry. Express Agency, Inc., 296 F.2d 847, 851 (2d Cir. 1961)). Plaintiff alleges that Hoag made a number of discriminatory comments to plaintiff; for example, when plaintiff asked Hoag why he removed plaintiff's access to HAZMAT locations, Hoag responded that he was concerned about plaintiff "since he is from Egypt" and that his decision "was a precautionary measure." See Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 115-16 (2d Cir. 2007); see also Rose v. N.Y.C. Bd. of Educ., 257 F.3d 156, 162 (2d Cir. 2001) (finding that remarks were sufficient to show a discriminatory animus). Because plaintiff has pled facts demonstrating that he suffered an adverse employment action that was plausibly caused by a discriminatory intent, plaintiff has sufficiently pled a Title VII discrimination claim.

I briefly address here plaintiff's Title VII discrimination claim based on his "perceived religion." Although I find that the amended complaint sufficiently alleges a Title VII discrimination claim based on national origin and race, there is no discrimination claim based on perceived religion. The two incidents that make up plaintiff's discrimination claim based on perceived religion – that during an Equal Employment Opportunity ("EEO") investigation, the EEO Officer failed to investigate plaintiff's "evidence" and subsequently insisted on an English-only policy with the DEP, and Hoag's statement to plaintiff that, "Is it true that Bedouins have 70 kids?" – do not sufficiently state a religious discrimination claim. The EEO Officer's failure to properly conduct the EEO investigation does not plausibly show that plaintiff suffered an adverse employment action. See O'Dell v. Trans World Entm't Corp., 153 F. Supp. 2d 378, 396

(S.D.N.Y. 2001), aff'd, 40 F. App'x 628 (2d Cir. 2002). Additionally, imposition of an English-only policy, without any additional evidence of discrimination, is not an adverse employment action. See Pacheco v. New York Presbyterian Hosp., 593 F. Supp. 2d 599, 612-13 (S.D.N.Y. 2009). In this case, plaintiff does not present any facts suggesting a discriminatory motive behind the English-only policy, and therefore it cannot serve as a basis for plaintiff's discrimination claim. See Patane, 508 F.3d at 112-13; Soberal-Perez v. Heckler, 717 F.2d 36, 41-42 (2d Cir. 1983); Brewster v. The City of Poughkeepsie, 447 F. Supp. 2d 342, 351 (S.D.N.Y. 2006). Finally, a single comment about Bedouins does not indicate that defendants harbored a discriminatory animus against plaintiff based on his perceived religion. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (noting that the "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII") (quoting Harris v. Forklift Sys., 510 U.S. 17, 20 (1993)) (internal quotation marks omitted).

c. *Plaintiff's Remaining Discrimination Claims*

Plaintiff has also brought discrimination claims under § 1981, § 1983, NYSHRL, and NYCHRL against the Individual Defendants. Discrimination claims under § 1981, § 1983, and NYSHRL are analyzed under the same framework and pleading standard as Title VII claims. See Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000); Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 72 (2d Cir. 2006).

To state a discrimination claim under NYCHRL, "a plaintiff must only show differential treatment of any degree based on a discriminatory motive; 'the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct.'" Gorokhovsky v.

N.Y.C. Hous. Auth., No. 13 Civ. 666, 2014 WL 308018, at *2 (2d Cir. Jan. 29, 2014) (quoting

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 114 (2d Cir. 2013)); see also

Pryor v. Jaffe & Asher, LLP, at *3 (S.D.N.Y. Jan. 15, 2014) (citing Williams v. N.Y.C. Hous.

Auth., 872 N.Y.S.2d 27, 39 (2009)).

Because analysis of plaintiff's remaining discrimination claims requires application of the

Title VII framework, plaintiff's remaining discrimination claims against McBride, Milazzo, and

Zoumboulias must fail. Firstly, the allegations involving McBride and Milazzo do not give rise

to an inference that an adverse employment action was taken. Plaintiff alleges that McBride,

along with Hoag, discriminated against plaintiff with respect to plaintiff's November 2009

promotion and raise by paying him the same overall salary as Harry Mayer, a Caucasian DEP

employee, even though plaintiff possessed more "directly applicable experience, more longevity,

more overtime and a higher previous base salary" than Mayer. Additionally, in March 2010,

McBride and Hoag would not let plaintiff "write up" employee Saffa Yacoub, even though they

had previously permitted Kim Hanna, a Caucasian employee, to do so nine years earlier.[2]

Plaintiff is not alleging that defendants failed to promote him, see Brown v. Coach Stores, Inc.,

163 F.3d 706, 709 (2d Cir. 1998); rather, plaintiff alleges that it was discriminatory for Mayer to

get promoted alongside him. The fact that one of plaintiff's coworkers received the same salary

as plaintiff despite having less experience did not cause any actual injury to plaintiff, and thus

---

[2] I note that to the extent plaintiff seeks to recover for actions against McBride, his discrimination claims under Title VII, § 1983, NYSHRL, and NYCHRL are time-barred. Under Title VII, plaintiff may only recover for discriminatory acts that occurred after April 18, 2011, which is 300 days prior to plaintiff's filing of an Equal Employment Opportunity Commission ("EEOC") charge of discrimination. See 42 U.S.C. § 2000e-5(e)(1); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108-09 (2002). The statute of limitations period in New York for discrimination claims under § 1983, NYSHRL and NYCHRL is three years. See Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997); N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d). Because discrete discriminatory acts are not actionable if time-barred, see Morgan, 536 U.S. at 102, plaintiff may not recover for any discriminatory acts prior to October 21, 2010 under § 1983, NYSHRL, and NYCHRL. However, to the extent that any discrete acts are time-barred, they can still serve as background evidence for plaintiff's discrimination claims. See Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135, 150 (2d Cir. 2012); DeNigris v. N.Y.C. Health & Hospitals Corp., 861 F. Supp. 2d 185, 191-92 (S.D.N.Y. 2012). For § 1981 discrimination claims, the statute of limitations period is four years. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-83 (2004).

plaintiff did not suffer an adverse employment action. See United States v. Vulcan Soc., Inc., 897 F. Supp. 2d 30, 36 (E.D.N.Y. 2012) (noting that "the purpose of Title VII is to make persons whole for *injuries suffered* on account of unlawful employment discrimination") (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 417-19 (1975)) (emphasis added). The same can also be said about plaintiff's not being able to write up Yacoub, an employee who is not even alleged to have been under plaintiff's supervision. Plaintiff's inability to write up Yacoub could not have reasonably caused a "materially adverse" change in plaintiff's working conditions; instead, it was a "mere inconvenience." Galabya, 202 F.3d at 640; see also Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 351 (S.D.N.Y. 2006). Moreover, plaintiff's discrimination claims against McBride even fail under the more liberal standard of NYCHRL, because plaintiff has not presented any facts suggesting that he was treated less well than others at DEP because of his national origin or race. See Mihalik, 715 F.3d at 110.

As for Milazzo, plaintiff alleges that he caused a reduction in his salary and demoted him when he sent an interoffice memorandum to the Deputy Commissioner of Human Resources requesting the demotion. All Milazzo was alleged to have done was send an interoffice memorandum; he is not even alleged to have had decision-making authority over plaintiff's salary and/or title, and the fact that he sent the memorandum to someone else strongly suggests that he lacked such authority. Writing and sending an interoffice memorandum concerning someone in a protected class, without more, cannot provide a basis for a discrimination claim. See Patane, 508 F.3d at 112-13; McIntyre, 380 F. App'x at 48.

Secondly, while plaintiff may have plausibly suffered an adverse employment action at the hands of Zoumboiulias, as outlined above, plaintiff has failed to allege any facts suggesting that any of the adverse employment actions by Zoumboulias were taken because of a

discriminatory animus.  See Mihalik, 715 F.3d at 110; Patane, 508 F.3d at 112-13; McIntyre, 380

F. App'x at 48; but see Wright, at *4 (finding adverse employment action where plaintiff was

given menial tasks and coworker made at least one discriminatory remark about plaintiff's

protected characteristic).  Plaintiff does not allege that Zoumboulias made any remarks to

plaintiff about his race or national origin indicating a possible discriminatory animus, nor does

he plead any other facts suggesting that Zoumboulias's actions were motivated by plaintiff's

protected characteristics.  See Patane, 508 F.3d at 112-13.  Plaintiff has also failed to plead facts

that raise an inference of discrimination based on Zoumboulias subjecting plaintiff to disparate

treatment, since plaintiff has not identified a similarly situated employee who Zoumboulias

allegedly treated more favorably.  See McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir.

2001).  Instead, plaintiff relies solely on conclusory allegations, e.g., that "[d]efendants'

continued exclusion of plaintiff from projects was consistent with their ongoing discriminatory

animus towards plaintiff's national origin," as the basis for his discrimination claim.  Conclusory

allegations cannot support a discrimination claim.  See Iqbal, 556 U.S. at 686.

Accordingly, plaintiff's discrimination claims under § 1981, § 1983, NYSHRL, and

NYCHRL against McBride, Milazzo, and Zoumboulias are dismissed.

## II.     Plaintiff's Hostile Work Environment Claims

### a.   *Pleading Standard*

To state a claim for a hostile work environment under Title VII, plaintiff must plead facts

showing that his workplace is "permeated with discriminatory intimidation, ridicule, and insult

that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment."  Harris, 510 U.S. at 21.  A hostile environment should

be assessed by looking at all of the circumstances surrounding the alleged harassment.  See id. at 23.

> b.  *Plaintiff's Title VII Hostile Work Environment Claim*

In support of his hostile work environment claim under Title VII, plaintiff points to numerous discriminatory comments made by defendant Hoag from March 2009 to August 2011, including a number of remarks implying that plaintiff was associated with terrorism because he was from Egypt.  These allegations sufficiently support plaintiff's hostile work environment claim against the City.  See Gregory v. Daly, 243 F.3d 687, 692-93 (2d Cir. 2001).  Plaintiff, who claims to have endured harassing and discriminatory comments from a supervisor for years, has plausibly alleged that he suffered a "severe and pervasive" work environment that "alter[ed] the conditions of [his] employment."  Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).  Therefore, defendant's motion to dismiss is denied as to plaintiff's Title VII hostile work environment claim.

> c.  *Plaintiff's Remaining Hostile Work Environment Claims*

The amended complaint also contains hostile work environment claims against the Individual Defendants pursuant to § 1981, § 1983, NYSHRL, and NYCHRL.  Defendants have not moved to dismiss the hostile work environment claims against Hoag, and so only examination of the claims against McBride, Milazzo, and Zoumboulias is necessary.  Hostile work environment claims pursuant to § 1981, § 1983, and NYSHRL are analyzed under the same framework as a Title VII claim.  See Patane, 508 F.3d at 115; Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000); Sullivan v. Newburgh Enlarged Sch. Dist., 281 F. Supp. 2d 689, 708 (S.D.N.Y. 2003).

To state a hostile work environment claim under NYCHRL, a plaintiff need only allege differential treatment of any degree based on a discriminatory motive. <u>Gorokhovsky</u>, at *2 (citing <u>Mihalik</u>, 715 F.3d at 114). Even a single comment may be actionable under NYCHRL "in appropriate circumstances." <u>Id.</u> (quoting <u>Mihalik</u>, 715 F.3d at 114). A claim under NYCHRL should only be dismissed if plaintiff does not allege behavior by defendants that "cannot be said to fall within the broad range of conduct that falls between severe and pervasive on the one hand and a petty slight or trivial inconvenience on the other." <u>Hernandez v. Kaisman</u>, 957 N.Y.S.2d 53, 58-59 (2012) (quotations and citations omitted).

Plaintiff has not sufficiently alleged that he was subjected to harassment by McBride and Milazzo. As to McBride, the incidents making up plaintiff's hostile work environment claim – the fact that plaintiff was paid the same amount as his co-worker Mayer (despite plaintiff having more longevity, experience, more overtime, and a higher base salary) and McBride's preventing plaintiff from writing up another employee – do not present conduct that was "severe and pervasive." <u>Gregory</u>, 243 F.3d at 691 (quoting <u>Harris</u>, 510 U.S. at 21). The same is true regarding the allegations against Milazzo, who is merely alleged to have sent an interoffice memorandum. Generally, to be severe and pervasive, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." <u>Alfano v. Costello</u>, 294 F.3d 365, 374 (2d Cir. 2002) (quotations and citations omitted). In this case, McBride's and Milazzo's alleged actions were discrete and isolated. Additionally, although a single episode of harassment that is sufficiently severe can amount to a hostile work environment, the acts complained of here do not meet that standard, given that none of these alleged actions could be said to "substantially interfere with or impair [plaintiff's] ability to do his job." <u>Davis-Bell v. Columbia Univ.</u>, 851 F. Supp. 2d 650, 672 (S.D.N.Y. 2012) (quoting

Mathirampuzha v. Potter, 548 F.3d 70, 79 (2d Cir. 2008)).  Even examining plaintiff's claims

against McBride and Milazzo under NYCHRL, the actions alleged to be taken by them are no

more damaging and significant than a "petty slight" or "trivial inconvenience."  Hernandez, 957

N.Y.S.2d at 58-59.  Additionally, the amended complaint does not give rise to an inference that

either McBride's or Milazzo's actions were taken with a discriminatory intent.  See Desardouin

v. City of Rochester, 708 F.3d 102, 105 (2d Cir. 2013); see also Harris, 510 U.S. at 21.

This is also the problem with plaintiff's hostile work environment claims against

Zoumboulias.  The amended complaint contains numerous actions done by Zoumboulias that

plausibly give rise to an inference that Zoumboulias' conduct was severe and pervasive enough

to alter the conditions of plaintiff's employment.  See Harris, 510 U.S. at 21.  However, plaintiff

has not alleged any facts plausibly showing that any of the actions taken by Zoumboulias were

done with a discriminatory intent.  See id.  Accordingly, defendants' motion to dismiss is granted

with respect to plaintiff's § 1981, § 1983, NYSHRL, and NYCHRL hostile work environment

claims against McBride, Milazzo, and Zoumboulias.

### III.    Plaintiff's Retaliation Claims

a.  *Section 1983 Retaliation under the Fourteenth Amendment*

Section 1983 does not permit a retaliation claim based on the Equal Protection Clause of

the Fourteenth Amendment.  See Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996).  Therefore,

to the extent plaintiff relies on the Fourteenth Amendment as a basis for his Section 1983

retaliation claim, it is dismissed.

b.  *Section 1983 Retaliation under the First Amendment*

Whether a public employee has alleged a valid § 1983 retaliation claim based on the First

Amendment requires two inquiries: "(1) whether the employee spoke as a citizen on a matter of

public concern and, if so (2) whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotation marks and citations omitted). "[A] topic is a matter of public concern for First Amendment purposes if it is 'of general interest,' or 'of legitimate news interest,' or 'of value and concern to the public at the time' of the speech." Jackler v. Byrne, 658 F.3d 225, 236 (2d Cir. 2011) (quoting City of San Diego v. Roe, 543 U.S. 77, 83-84 (2004)). To determine whether the speech at issue here addresses a matter of public concern, the court should "focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999). However, if the speech at issue was made pursuant to a plaintiff's official duties as an employee for a defendant, the plaintiff is "not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 422 (2006). This is true even if the subject of the employee's speech is a matter of public concern. Looney v. Black, 702 F.3d 701, 710 (2d Cir. 2012).

Plaintiff was removed from several projects after expressing his concerns about each of them. Plaintiff alleges that he objected to the choice of IDS International as a vendor for a project because "the agency had not adhered to the City's procurement policy and had not solicited proposals from multiple vendors." In response, Hoag "immediately" removed plaintiff from the project. Plaintiff was removed from a separate program after notifying Hoag that one of his staff members had been incarcerated, which was in violation of Homeland Security policy. Hoag also removed plaintiff from the First Responders group in retaliation for reporting abuse of standby pay and the misuse of city cars and EZ passes.

The statements plaintiff made regarding the choice of IDS International as a vendor for a project that he was working on at DEP cannot support plaintiff's First Amendment retaliation claim. In fact, plaintiff states in the complaint that the project was his idea, and therefore any comment on the choice of vendor for this project would likely have been made pursuant to his official duties to oversee the project. See Garcetti, 547 U.S. at 421. It is clear that plaintiff's speech could have only existed because of DEP's "professional responsibilities;" that is, DEP's involvement with the project at issue. See Looney, 702 F.3d at 710-11.

On the other hand, plaintiff has pled facts plausibly showing that he acted out of public concern when he notified defendants that an employee had been incarcerated. He could have believed that having a convicted criminal work in the Biowatch Program presented a security risk, particularly when Homeland Security policy prohibited persons with prior convictions from working on the project. See Jackler, 658 F.3d. at 236-37. Likewise, plaintiff has plausibly shown that he complained about his coworkers' misuse of city cars and EZ passes out of a concern that tax dollars were being misspent, rather than for personal reasons. The use of public taxes is of general interest to the public at large. See Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., 391 U.S. 563, 571-72 (1968); Bieluch v. Sullivan, 999 F.2d 666, 671 (2d Cir. 1993).

The question then turns to whether plaintiff has sufficiently alleged an "adverse action" to support his First Amendment retaliation claim. While an adverse action includes more obvious actions such as "discharge, refusal to hire, refusal to promote, demotion, [and] reduction in pay," it may also include things such as "negative evaluation letters, express accusations of lying," and reassignment to undesirable duties as an "alleged demotion." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006) (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.

1999)).  Whether an employer's action is adverse involves examining whether the action "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  Dillon v. Morano, 497 F.3d 247, 254 (2d Cir. 2007) (internal quotation marks and citation omitted).  This requires using an objective standard and looking at whether the total circumstances of plaintiff's workplace "changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace."  Anemone v. Metropolitan Transp. Auth., 410 F. Supp. 2d 255, 265 (S.D.N.Y. 2006) (citing Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2006)).

Here, plaintiff alleges he was removed from various projects and given tasks that did not "require[] plaintiff to work as a mechanical engineering specialist."  While plaintiff may have a higher hurdle to climb at trial to demonstrate that these actions were adverse, for purposes of the instant 12(b)(6) motion, plaintiff has met his burden to plead facts plausibly suggesting an adverse action.  See Dillon, 497 F.3d at 254 (noting that "we do not foreclose the possibility that the assignment of 'menial' tasks may constitute adverse employment action"); Forras v. Andros, 470 F. Supp. 2d 283, 290-91 (S.D.N.Y. 2005) (finding that a voluntary firefighter's being placed on restrictive duty was an adverse action).

Additionally, the amended complaint plausibly shows that the claimed adverse actions were taken in part as retaliation for plaintiff's statements.  Defendants retaliated against plaintiff immediately after plaintiff made each respective complaint.  An inference of retaliatory intent can be made from a temporal relationship, provided that the alleged retaliation occurred shortly after the protected conduct.  See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001); Nagle v. Marron, 663 F.3d 100, 110 (2d Cir. 2011).  Finally, the alleged retaliation was related to

plaintiff's statements; in each instance, he was removed from the project which he complained about.  See Garcia v. Hartford Police Dep't, 706 F.3d 120, 129-30 (2d Cir. 2013).

Plaintiff also claims that after he assisted his co-workers Jennifer Cheeseman and Peter Dispensa with filing union grievances, Zoumboulias retaliated against him by refusing to provide plaintiff with any mechanical engineering tasks commensurate with his title and instead assigning him only "menial" work.  Courts in this Circuit have found that union membership itself is enough to satisfy the public concern element of a First Amendment retaliation claim. See Clue v. Johnson, 179 F.3d 57, 61 (2d Cir. 1999); Buckley v. New York, 959 F. Supp. 2d 282, 298 (E.D.N.Y. 2013); Donovan v. Inc. Vill. of Malverne, 547 F. Supp. 2d 210, 218 (E.D.N.Y. 2008).  After plaintiff assisted his co-workers, Zoumboulias is alleged to have drastically changed plaintiff's responsibilities and tasks the day after plaintiff assisted in filing the union grievances.  As noted above, such a temporal relationship raises an inference of retaliatory intent.  See Breeden, 532 U.S. at 273.  Therefore, plaintiff's § 1983 retaliation claim based on the First Amendment may remain.

        c. *Plaintiff's Remaining Retaliation Claims*

Under Title VII, to establish a prima facie case for retaliation, a plaintiff must show that "(1) [he] was engaged in protected activity; (2) [his] employer was aware of that activity; (3) [he] suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action."  Distasio v. Perkin Elmer Corp., 157 F.3d 55, 66 (2d Cir. 1998).  A plaintiff need not plead a prima facie case of retaliation in the complaint; a plaintiff only needs to give defendants "fair notice of the basis for [his] claims." Swierkiewicz, 534 U.S. at 514.  However, a court may still consider the elements of a prima

facie case of retaliation to determine whether plaintiff has given "fair notice" of his claim. See

Corbett v. Napolitano, 897 F. Supp. 2d 96, 111 (E.D.N.Y. 2012) (citing cases).

Retaliation claims under § 1981 and NYSHRL are analyzed under the same framework.

See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010); Gioia v. Forbes Media LLC, 501 F.

App'x 52, 55 (2d Cir. 2012). NYCHRL claims of retaliation are also are reviewed under the

same framework as Title VII claims, however the "the employer's actions need not be materially

adverse to the plaintiff, but merely reasonably likely to deter a person from engaging in a

protected activity." Sotomayor v. City of New York, 862 F. Supp. 2d 226, 262 (E.D.N.Y. 2012),

aff'd, 713 F.3d 163 (2d Cir. 2013) (quotations and citations omitted).

An employee engages in a "protected activity" when "he has opposed any [unlawful

discriminatory practice] . . . , or because he has made a charge, testified, assisted, or participated

in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a); see also

Santucci v. Veneman, No. 01 Civ. 6644, 2002 WL 31255115, at *3 (S.D.N.Y. Oct. 8, 2002).

Here, plaintiff engaged in a protected activity when he filed an EEOC charge of retaliation and

discrimination based on his national origin on February 2, 2012. Santucci, at *5. Shortly

thereafter, defendants Zoumboulias and Milazzo allegedly revoked plaintiff's access to City

Time and plaintiff was required to handscan. Zoumboulias additionally told plaintiff that he

could not receive overtime or compensatory time; plaintiff was the only employee in his unit that

did not have the opportunity to make overtime and compensatory time.

Defendants argue that plaintiff did not explicitly allege that the Individual Defendants

were aware that plaintiff filed an EEOC charge, and therefore his retaliation claims do not satisfy

the second element of a prima facie retaliation claim. See Distasio, 157 F.3d at 66. However,

plaintiff merely has to allege that DEP, and not the Individual Defendants themselves, were

aware that plaintiff was engaged in a protected activity.  See Gordon v. N.Y.C. Bd. Of Educ., 232 F.3d 111, 116 (2d Cir. 2000).  Because the EEOC charge was filed against the agency, it is highly likely the agency was aware of it.

The issue of whether plaintiff has pled facts demonstrating that he suffered an adverse action is not as clear.  An adverse action under Title VII's retaliation provision is broader than in Title VII's anti-discrimination provisions and "extends beyond workplace-related or employment-related retaliatory acts and harm," but "petty slights or minor annoyances that often take place at work and that all employees experience do not constitute actionable retaliation." Hicks, 593 F.3d at 165 (internal quotation marks and citations omitted).  Revocation of access to CityTime falls in this latter category.  In fact, plaintiff only used CityTime for seven months out of his 20+ years at DEP, therefore implying that the impact of the revocation of CityTime was quite minimal.  See Levitant v. City of New York Human Res. Admin., 914 F. Supp. 2d 281, 302 (E.D.N.Y. 2012).  Indeed, the complaint is lacking in demonstrating how plaintiff's lack of CityTime adversely affected him.  Further, plaintiff's requiring to handscan is also not an adverse action.  See Reckard v. Cnty. Of Westchester, 351 F. Supp. 2d 157, 161 (S.D.N.Y. 2004).  The only plausible adverse action that plaintiff could have suffered was Zoumboulias' refusal to give overtime or compensatory time, because lack of overtime could affect plaintiff's overall compensation and therefore "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  See Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted); Gonzalez v. City of New York, 354 F. Supp. 2d 327, 339 (S.D.N.Y. 2005).

Finally, plaintiff has sufficiently pled a causal connection between his protected activity and defendants' denial of overtime or compensatory time.  Plaintiff states that "[i]t was in the

wake of plaintiff's EEOC complaint that Zoumboulias told plaintiff that no overtime or compensatory time would ever be available to him . . . ." A causal relationship between the protected activity and the adverse action may be indirectly established by showing that the adverse action came soon after the exercise of the protected activity. Cifra v. G.E. Co., 252 F.3d 205, 217 (2d Cir. 2001). Therefore, defendants' motion to dismiss as to plaintiff's retaliation claims under Title VII, § 1981, NYSHRL, and NYCHRL claims is denied.

## IV. Municipal Liability

To hold a municipality liable in an action under § 1983, plaintiff must plead facts that plausibly show "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks and citations omitted); see also Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). Even if it has no official written policy, a municipality may still be liable under § 1983 when a practice that results in the deprivation of constitutional rights is "so persistent and widespread as to practically have the force of law." Connick v. Thompson, ⸺ U.S. ⸺, ⸺, 131 S. Ct. 1350, 1359 (2011); Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012). Plaintiff alleges that he was treated in the same manner as three other DEP employees of Middle Eastern national origin, all of whom were removed from managerial positions or positions of authority within the DEP's Bureau of Police & Security and Division of Emergency Response and Technical Assistance. One of those employees was Ahmad Soloki, who was "escorted out [of the DEP] by the FBI solely because of his Middle Eastern national origin." Although plaintiff claims that Soloki was removed solely because of his national origin, elsewhere in the amended complaint he notes that Soloki was "accused of sharing information regarding the location of chemical storage facilities . . . ." Plaintiff does not provide any details about the other

two DEP employees aside from noting that they are of Middle Eastern national origin and they were demoted.

The amended complaint does not plausibly show that so many DEP employees of Middle Eastern origin were demoted because of a widely-held discriminatory animus, which could constitute a practice at DEP that "practically [had] the force of law." Connick, 131 S. Ct. at 1359. A practice that has allegedly affected only a handful of employees is not sufficiently widespread and persistent. See Green v. City of New York, 465 F.3d 65, 81 (2d Cir. 2006) (single incident in which medical personnel were not properly trained did not amount to a widespread custom or practice); Giaccio v. City of New York, 308 F. App'x 470, 472 (2d Cir. 2009) (four examples of alleged deprivations of constitutional rights "falls far short of establishing a practice that is so persistent or widespread as to justify the imposition of municipal liability.") (quotations omitted); Liang v. City of New York, No. 10 CV 3089, 2013 WL 5366394, at *16 (E.D.N.Y. Sept. 24, 2013) (dismissing Monell claim, finding insufficient "allegations regarding an unofficial practice or custom . . . limited to the actions of specific detectives in a single police unit and factually supported only by a pleader's perceptions of his own experience.").

Finally, in his opposition to defendants' motion to dismiss, plaintiff claims that the DEP's inaction in response to plaintiff's complaints about defendants Hoag, McBride, Milazzo, and Zoumboulias, "more than establishes a cause of action under Monell." But despite alleging that defendants failed to respond to complaints that *his* constitutional rights were denied, plaintiff has not alleged facts plausibly showing that *other* DEP employees of Middle Eastern origin also complained to defendants that they were deprived of their constitutional rights and that defendants failed to respond to those other complaints. Because plaintiff has failed to show that

there was a practice or custom within the DEP of failing to act in response to employee complaints, but instead has only pled that it failed to respond to plaintiff's complaints, he has failed to allege a viable Monell claim.  See Zahra, 48 F.3d at 685.  Accordingly, plaintiff's claims against the City of New York are dismissed.[3]

## V.    Plaintiff's Hostile Work Environment Claims Are Not Time-Barred

In New York, a plaintiff bringing an action under Title VII must first file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act.  See 42 U.S.C. § 2000e-5(e)(1); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108-09 (2002).  Plaintiff filed his EEOC charge of discrimination on or about February 2, 2012.  Defendants argue that the portion of plaintiff's claims under Title VII based on discrete acts that occurred prior to April 18, 2011, should be dismissed as untimely.

A hostile work environment is considered a single unlawful employment practice composed of a "series of separate acts."  Morgan, 536 U.S. at 119.  Under the continuous violations doctrine, a plaintiff is not barred from recovering damages for individual acts that fall outside of the statutory limitations period so long as they are part of a single unlawful practice containing an act that occurred within the 300-day period.  See id. at 117-18.  District courts in this Circuit have held that the continuous violations doctrine also applies to hostile work environment claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983, NYSHRL and NYCHRL.  See Bermudez v. City of New York, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011); Richards v. City of New York, No. 05 CV 1163, 2007 WL 1030294, at *10 (E.D.N.Y. Mar. 30, 2007).

---

[3] Additionally, plaintiff has conceded that DEP is not a suable entity.  Accordingly, plaintiff's claims against DEP are dismissed.  See N.Y. City Charter Ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007).

Plaintiff alleges that he began experiencing a hostile work environment as early as March 2009, at which point defendants began making discriminatory comments to plaintiff, stripped plaintiff of many of his responsibilities, and subjected plaintiff to disparate treatment because of his protected characteristics.  Many of the incidents making up plaintiff's hostile work environment claims occurred after April 18, 2011.  For instance, between June and July 2011, Hoag allegedly restricted plaintiff's power to approve overtime requests and transferred plaintiff's supervisory responsibilities to plaintiff's secretary.  While portions of plaintiff's hostile work environment occurred prior to April 18, 2011, they are sufficiently related to those acts that occurred after that date to be considered part of the same unlawful practice.  See Morgan, 536 U.S. at 119.  From March to November 2009, Hoag allegedly made several comments to plaintiff demonstrating his discriminatory animus towards individuals of Middle Eastern descent; this bias influenced those actions he took against plaintiff after April 18, 2011. See Raniola, 243 F.3d at 622.  These allegations plausibly show a pattern of discrimination that amounts to a hostile work environment.  See Feingold v. New York, 366 F.3d 138, 150-51 (2d Cir. 2004).

Since plaintiff's hostile work environment claim contains some acts which occurred within 300 days of February 2, 2012, those acts making up the hostile work environment that occurred before April 18, 2011 are not time-barred under the continuous violations doctrine.  See Morgan, 536 U.S. at 117-19.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted in part and denied in part.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      May 7, 2014